IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMBULATORY SERVICES OF PUERTO RICO, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>SANKAR NEPHROLOGY GROUP, LLC,<br><br>       Defendant. | Civil Action No.  4:17-cv-00230 |

## PLAINTIFF'S MOTION TO STAY ARBITRATION PENDING RESOLUTION OF THIS LITIGATION AND BRIEF IN SUPPORT

Pursuant to Local Rule 7.1 and Section 3 of the Federal Arbitration Act, Ambulatory Services of Puerto Rico, LLC ("ASPR or "Plaintiff") moves the Court to stay the arbitration filed by Defendant Sankar Nephrology Group, LLC ("SNG") before the American Health Lawyers Association Dispute Resolution Service ("AHLA").  The claims raised in this action are not subject to arbitration and are governed by the parties' Membership Contribution Agreement and Agreement to Sell Assets.

Dated: March 16, 2017          Respectfully submitted,

/s/ Carlos F. Concepción_____
Carlos F. Concepción (*pro hac vice* forthcoming)
Texas Bar No.  24044237
Adrian Nuñez (*pro hac vice* forthcoming)
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL 33131
Telephone: 305.714.9700
Facsimile:  305.714.9799
E-mail:  cconcepcion@jonesday.com
E-mail:  anunez@jonesday.com
**Counsel for Plaintiff Ambulatory Services of Puerto Rico, LLC**

### CERTIFICATE OF CONFERENCE

Plaintiff is unable to confer with Defendant who has not yet made its appearance.

> */s/ Carlos F. Concepción*
> *Carlos F. Concepción*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that Plaintiff's Motion to Stay Arbitration Pending this Litigation and Brief in Support was filed via the Court's CM/ECF on March 16, 2017 was served upon all counsel of record that have consented to electronic service via the Court's CM/ECF system.

> */s/ Carlos F. Concepción*
> *Carlos F. Concepcion*

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO STAY ARBITRATION PENDING RESOLUTION OF THIS LITIGATION

**I.      INTRODUCTION**

ASPR and SNG executed a Membership Contribution Agreement ("MCA") on August 1, 2014. The MCA governs the parties obligations with respect to their asset contributions into a new joint venture entity named SNG Naranjito, L.L.C. ("Naranjito"). The MCA provides that "any action arising under this Agreement shall be in a court of competent jurisdiction in Fort Worth, Texas."

ASPR and SNG executed an Agreement to Sell Assets of SNG Naranjito, LLC to Fresenius Medical Care ("Member Sale Agreement") on February 9, 2016.[1] The Member Sale Agreement sets forth the parties' agreement as to the disbursement of proceeds from a sale of Naranjito's assets. The Member Sale Agreement does not contain a dispute resolution clause.

SNG's Demand for Arbitration and Statement of Claim ("Demand for Arbitration") filed before the AHLA includes claims arising under the MCA or the Member Sale Agreement which properly should be addressed in this litigation.[2] Because the parties expressly agreed to litigate and not arbitrate the claims in this action, ASPR respectfully requests the Court stay the arbitration until the litigation is completed or, alternatively, stay those claims to be addressed by this Court.

**II.     STATEMENT OF FACTS**

On or about August 2014, ASPR and SNG agreed to start and jointly operate a dialysis clinic (the "Clinic") in Puerto Rico. The MCA governs the manner in which each ASPR and

---

[1] True and correct copies of the MCA and Member Sale Agreement are attached hereto at Appx. 5-9 and 11, respectively.

[2] A true and correct copy of the operative Demand for Arbitration is attached hereto at Appx. 13-17.

SNG contributed certain business assets ("Contributed Assets") to Naranjito in exchange for their membership interest.

Pursuant to the terms of the MCA, ASPR and SNG agreed that the Contributed Assets would be unencumbered of liabilities or obligations personal to either SNG or ASPR. Specifically, Section 2 of the MCA provides:

> Notwithstanding any provision of this Agreement to the contrary, [Naranjito] is **not assuming in conjunction herewith any other liabilities and obligations, including, without limitation, all liabilities and obligations associated with any activities conducted by the Members** [ASPR and SNG], jointly or severally, other than with respect to the Contributed Assets and their use for [Naranjito's] purposes.

Appx 6 (emphasis added).

Pursuant to the terms of the MCA, SNG acquired 60% of the equity interest in Naranjito and ASPR acquired the remaining 40%. Id.  The MCA further provides that "[t]his Agreement embodies the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein."  MCA § 5(d) at Appx 7.

After operating Naranjito for approximately two years, ASPR sought a buyer for the Clinic.  ASPR engaged in negotiations with various potential buyers and secured a $7,000,000 offer from Bio-Medical Applications of Puerto Rico, Inc. ("Bio-Medical").  ASPR and SNG executed the Member Sale Agreement in anticipation of the sale to Bio-Medical, which allocated 40% of the proceeds, or $2.8 Million, to ASPR.  During the due diligence period, Bio-Medical notified ASPR that a lien existed against the Clinic's business assets in favor of Branch Banking and Trust Company ("BB&T").

Unbeknownst to ASPR, and contemporaneous with entering into the MCA, SNG encumbered all of the Contributed Assets, including ASPR's share.  Specifically, on August 5,

2014, SNG, on behalf of itself and Naranjito, executed a Promissory Note in favor of BB&T in the principal amount of $3,700,000 ("BB&T Loan"). SNG also executed a Security Agreement purporting to grant a lien in favor BB&T in Naranjito's personal property, including the Contributed Assets. SNG's actions were contrary to Section 2 of the MCA.

ASPR, thereafter, made demands upon SNG and Bio-Medical for its full 40% share of the proceeds. SNG refused ASPR's demands. In an attempt to hamper ASPR's efforts, on September 8, 2016, SNG filed suit in Puerto Rico pursuant to Naranjito's Limited Liability Company Operating Agreement ("Operating Agreement").[3] SNG sought injunctive relief against ASPR along with relief against ASPR's owner, Carlos R. Rivera ("Rivera").

Undeterred, ASPR further insisted in its right to full payment of $2.8 Million without any set-offs for the BB&T Loan, which had a then-existing balance of approximately $2.72 Million.

On December 7, 2016, SNG filed a second lawsuit against ASPR and Rivera in Puerto Rico asserting claims against ASPR and Rivera for breach of fiduciary duty, violations of Puerto Rico corporate laws and for unjust enrichment in connection with the Operating Agreement.[4]

On December 22, 2016, without notice to ASPR, SNG voluntarily dismissed the Second Puerto Rico Suit and, on December 28, 2016, filed the Demand for Arbitration pursuant to the Operating Agreement.[5]

---

[3] SNG's suit was filed in the Court of First Instance, Bayamon, Puerto Rico, Case No. DPE2016-0624.

[4] SNG's second suit also was filed in the Court of First Instance of the Judicial Center of Bayamon, Puerto Rico, Case No. DAC2016-2126 ("Second Puerto Rico Suit").

[5] The Operating Agreement calls for arbitration of certain disputes after preliminary conditions are met. Specifically, Section 12.12 provides in pertinent part:

> [I]n the event that a dispute arises between two or more Members under this Agreement, the parties will first negotiate in good faith to try to resolve the

The Demand for Arbitration, among other claims, raises the same issues raised by ASPR's claims in this action. Specifically, SNG seeks a declaration from the panel: (1) that its actions in connection with the asset sale and receipt of the sale proceeds were properly authorized, and (2) as to how the sale proceeds should be allocated. Demand for Arbitration at Appx 15-16. SNG's claim is solely governed by the terms of the MCA and Member Sale Agreement and not the Operating Agreement.[6] And, the remedy SNG seeks falls within the claims raised in this action. Thus, this Court should resolve such claim.

### III. ARGUMENT

#### A. This Court has the Authority to Stay the SNG Arbitration.

Under the FAA, a litigant is entitled to a stay pending arbitration so long as the suit in which he is a party is "referable to arbitration" under a valid agreement and he "is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Firth Circuit, as other courts, agrees that federal courts have the power to do the reverse — to stay arbitrations pending court proceedings. Tai Ping Ins. Co. v. M/V Warschau, 731 F.2d 1141, 1144 (5th Cir. 1984) (citing Landis v. North Am. Co., 299 U.S. 248 (1936)) ("There is no provision in the Act for a stay of arbitration. Nonetheless, the case law clearly establishes that, in the appropriate circumstances, such an order

---

    dispute. The respective Members . . . shall meet in a timely manner and attempt in good faith to negotiate a settlement of such dispute during which time such persons shall disclose to the others all relevant information relating to such dispute. In the event that the parties are unable amicably to resolve the matter or matters in dispute, and except where the exigency of the matter reasonably requires injunctive relief to preserve the status quo, the Members shall submit all matter still in dispute to conclusive and binding arbitration.

Appx 58.

[6] The Demand for Arbitration also improperly includes claims against Rivera individually, who is not a signatory to the Operating Agreement. It also sets forth claims from the sale to Bio-Medical that should be governed by the Bio-Medical APA or belongs to Bio-Medical as SNG lacks standing to raise in its stead.

is within the power of the district court."); see, e.g., Texaco, 644 F.2d at 1154 (affirming stay of arbitration because claim for damages to the plaintiff's dock was outside the disputes falling within the arbitration clause); In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 141 (2d Cir. 2011) (enjoining certain claims raised in FINRA arbitration pursuant to the FAA); see also Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co., 643 F.2d 863, 868 (1st Cir. 1981) ("To allow a federal court to enjoin an arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of [the FAA].").

Thus, this Court has the authority to stay SNG's arbitration that is now pending before the AHLA.

  **B.**  **ASPR's Claims are Properly Resolved in this Action.**
    **1.**  **This Court Determines the Arbitrability of Claims.**

As a preliminary matter, whether an issue is arbitrable is a matter to be decided by the court. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 535 (5th Cir. 2008) (quoting Commerce Park at DFW Freeport v. Mardian Const. Co., 729 F.2d 334, 338 (5th Cir. 1984)) ("[T]he question of arbitrability is to be decided by the court on the basis of the contract entered into by the parties.").

Here, only the Operating Agreement contains an arbitration clause and such clause does not limit this Court's authority to decide arbitrability or delegate such power to the panel. Thus, this Court determines the arbitrability of claims.

**2.      Arbitration Should be Stayed.**

The claims raised in this action are properly before this Court and not subject to arbitration. The Complaint raises claims arising under the MCA or Member Share Agreement, which do not contain an arbitration clause. The claims also are not captured by the narrow arbitration clause of the Operating Agreement.

Arbitration "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit" and "may limit by contract the issues which they will arbitrate." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). Thus, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT & T Techs., 475 U.S. at 649 (citing Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374 (1974)).

Courts have granted a stay of arbitration over various claims that were found not to be within the scope of an arbitration agreement. see, e.g., Texaco, 644 F.2d at 1154 (staying case finding certain claims outside the scope of the arbitration clause and not subject to arbitration); In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 141 (2d Cir. 2011) (same).

Resolving a dispute regarding the arbitrability of a claim is a matter of contract interpretation. Gen. Motors Corp. v. Pamela Equities Corp., 146 F.3d 242, 247 (5th Cir. 1998) (citing Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, 611 F.2d 580, 583-84 (5th Cir. 1980)). A claim is not subject to arbitration if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., 475 U.S. at 650.

### (a)   The Claims in this Action are Not Subject to Arbitration.

Here, the MCA's choice of law and venue clause exclusively provides for litigation as the means to resolve claims "arising under" the MCA. MCA § 5(e) at Appx 7. ASPR's claim under Count I concerns SNG's acts to conceal the BB&T Loan and encumber the Contributed Assets contrary to Section 2 of the MCA. The facts and issues pertinent to such claim pre-date the start of Naranjito's operations, relate only to the MCA and do not require the construction of or references to the Operating Agreement.

Similarly, the Member Sale Agreement does not contain any dispute resolution or choice of law or venue clauses and, thus, there was never an agreement by the parties to arbitrate claims arising therefrom. See AT & T Techs., 475 U.S. at 648-49 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

Further, ASPR's claims do not arise under the Operating Agreement. The Operating Agreement's arbitration clause is narrow and applies to certain disputes that arise under that agreement only and not tangentially. Operating Agreement at Appx 58; cf. Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish narrow arbitration clauses that only require arbitration of disputes arising out of the contract from broad arbitration clauses governing disputes that relate to or are connected with the contract." (internal quotation marks omitted)); see also CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 174-76 (3d Cir. 2014) (finding the term "dispute" limited by other provisions in arbitration clause and, thus, certain direct claims were properly subject to litigation).

Even if the Operating Agreement's arbitration clause could be read broader – which it cannot – if the dispute does not arise under the Operating Agreement, the dispute is not subject to

arbitration. See The Rice Co. (Suisse), 523 F.3d at 536.[7] Thus, the Operating Agreement's narrow arbitration clause is not susceptible to an interpretation that covers the claims in this action.

Consequently, ASPR's claims in this action are properly resolved by this Court.

### (b)   Claim and Remedies Sought in Arbitration Fall within Claims in this Action.

A stay of arbitration is proper also because SNG's declaratory relief claim and corresponding remedies fall within the claims in this action.

Specifically, SNG seeks a declaration from the panel as to how the sale proceeds should be allocated between ASPR and SNG. Demand for Arbitration at Appx 16. That request falls squarely within the terms of the Member Sale Agreement, which expressly provides for the allocation of sale proceeds. Thus, this claim must be resolved by this Court.

SNG also seeks a declaration regarding its actions in the sale of the business assets and receipt of the proceeds. Again, this issue falls with the contracts in this action. The propriety of SNG's actions will viewed in light of its obligations under the MCA when it acquired its interest. Also, whether the proceeds were properly received falls within the terms of the Member Sale Agreement.

Consequently, SNG's declaratory relief claim and corresponding remedy with respect to the sale proceeds fall within the claims in this action. Thus, a stay of the arbitration is warranted.

---

[7] As noted by the Fifth Circuit in The Rice, "[e]ven where an arbitration provision is broad, requiring arbitration of [a]ny and all differences and disputes . . . we have declined to reverse a district court's order to stay arbitration, holding that where a complaint is not the result of a difference or dispute arising out of the [contract], the parties cannot be compelled to arbitrate." 523 F.3d at 536 (quoting Texaco, Inc. v. Am. Trading Transp. Co., 644 F.2d 1152, 1154 (5th Cir. 1981)) (internal quotation marks omitted).

## IV.  CONCLUSION

Neither the MCA nor the Member Sale Agreement contains an arbitration clause and, thus, none of the claims in this action are subject to arbitration.  This litigation is the proper forum to address all of ASPR's claims.

Further, a stay of the arbitration is proper because SNG's declaratory relief claim and corresponding remedies regarding the proper allocation of sale proceeds falls within the terms of the MCA and Member Sale Agreement and outside of the Operating Agreement.

Thus, ASPR respectfully requests the Court to enter an Order:  (a) finding that the claims in this action are not subject to arbitration and should be properly resolved by this Court, and (b) ordering a stay of arbitration with respect to the claims to be addressed in litigation, if not a full stay of the arbitration pending resolution of this litigation.

Dated:  March 16, 2017

Respectfully submitted,

/s/ Carlos F. Concepción
Carlos F. Concepción(*pro hac vice* forthcoming)
Texas Bar No.  24044237
Adrian Nuñez (*pro hac vice* forthcoming)
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL 33131
Telephone: 305.714.9700
Facsimile:  305.714.9799
E-mail:  cconcepcion@jonesday.com
E-mail:  anunez@jonesday.com
***Counsel For Plaintiff Ambulatory Services of Puerto Rico, LLC***