

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMBULATORY SERVICES OF PUERTO RICO, LLC, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 4:17-CV-00230-A |
| SANKAR NEPHROLOGY GROUP, LLC | § § § | |
| Defendant. | § | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STAY ARBITRATION, DEFENDANT'S MOTION TO COMPEL ARBITRATION, AND BRIEF IN SUPPORT

Defendant Sankar Nephrology Group, LLC files its Response to Plaintiff Ambulatory Services of Puerto Rico, LLC's Motion to Stay Arbitration and corresponding Motion to Compel Arbitration and asks the Court to deny Plaintiff's motion and compel the Parties and all issues to arbitration. Plaintiff and Defendant are the only members of SNG Naranjito, LLC. The Operating Agreement of SNG Narajito, LLC contains an arbitration agreement which encompasses all disputes among members and delegates the authority to decide the scope of the arbitration agreement to an arbitrator. Even if this Court were to take up the issue of arbitrability, a plain reading of Plaintiff's Complaint demonstrates that Plaintiff's claims amount to nothing more than a dispute between the members of SNG Naranjito, LLC which should be arbitrated.

Respectfully submitted,

_____
Brian C. Newby
State Bar No. 14947320
bnewby@canteyhanger.com

David K. Speed
State Bar No. 24070657
dspeed@canteyhanger.com

CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
Phone: (817) 877-2800
Fax: (817) 877-2807

*Attorneys for Defendant*
*Sankar Nephrology Group, LLC*

## CERTIFICATE OF CONFERENCE

Pursuant to LR 7.1(b), attorney for Defendant conferred with attorney for Plaintiff regarding Defendant's Motion to Compel Arbitration. For the reasons set forth in Plaintiff's Motion to Stay Arbitration, Plaintiff's attorney opposes the relief sought in Defendant's Motion to Compel Arbitration.

_____
David K. Speed

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on all counsel of record by that have consented to electronic service via the Court's CM/ECF system on April 5, 2017.

_____
David K. Speed

# BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION TO STAY ARBITRATION AND DEFENDANT'S MOTION TO COMPEL

## I. Introduction / Statement of Facts

Plaintiff Ambulatory Services of Puerto Rico, LLC and Defendant Sankar Nephrology Group, LLC created SNG Naranjito, LLC ("SNG Naranjito") in 2014 by and through the Naranjito Operating Agreement. Plaintiff owns 40% of the membership interest in SNG Naranjito and Defendant owns 60%. Appx. 54. Section 12.12 of the Naranjito Operating Agreement (the "Arbitration Provision") states:

> <u>Dispute Resolution</u>. Except for alleged breaches of Article X above, in the event that a dispute arises between two or more Members under this Agreement, the parties will first negotiate in good faith to try to resolve the dispute. The respective Members, or chief executive officers (or officers holding such authority) of such Members, shall meet in a timely manner and attempt in good faith to negotiate a settlement of such dispute during which time such persons shall disclose to the others all relevant information relating to such dispute, and except where the exigency of the matter reasonable requires injunctive relief to preserve the status quo, the Members shall submit all matters still in dispute to conclusive and binding arbitration in Fort Worth, Tarrant County, Texas, before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of The American Health Lawyers Association…

Appx. 50.

Per the Arbitration Provision and Federal law, Plaintiff and Defendant have agreed to arbitrate all disputes among members and have delegated the authority to decide the scope of the Arbitration Provision to the arbitrators. Appx. 50; *Cubria v. Uber Techs., Inc.*, A-16-CA-544-SS, 2017 WL 1034731, at *5–6 (W.D. Tex. Mar. 16, 2017).

Further, Rule 5.2(a) of the Commercial Arbitration Rules of the American Health Lawyer's Association states:

> ARBITRABILITY. Once appointed, the arbitrator may issue a preliminary award that addresses whether the arbitration clause is valid, and whether it applies to the claims or counterclaims raised by the parties.

Appx. 83.

Sometime after the creation of SNG Naranjito, and prior to the sale of its assets, Defendant learned that Plaintiff and/or Plaintiff's sole member, Carlos R. Rivera, engaged in conduct that constitutes a breach of the Operating Agreement and of their fiduciary duty to SNG Naranjito including wrongfully retaining funds, commercial insurance payments, Medicare/Medicaid payments, gains, and interests that belonged to SNG Naranjito. Defendant then learned that Plaintiff, as the administrator of the Clinic, had failed to ensure payment of a number of debts related to the everyday operations of SNG Naranjito, including employee payroll, rent, medical director services, utility bills, medical supplies, as well as, various vendor invoices. In order to avoid disruption in the operation of the Clinic, then owned by SNG Naranjito, Defendant paid the debts.

Pursuant to the Naranjito Operating Agreement, Defendant attempted to informally resolve these issues, but was unsuccessful.[1] Thereafter, on December 22, 2016, Defendant filed *Sankar Nephrology Group, L.L.C. v. Ambulatory Services of Puerto Rico, L.L.C. and Carlos R. Rivera*; Claim No. 3794 with the American Health Lawyer's Association in accordance with the Naranjito Operating Agreement (the "Naranjito Arbitration"). The issues of Defendant improperly withholding funds from SNG Naranjito and Plaintiff's failure to pay operational costs were placed before the arbitration panel because they stem from a dispute among the members of SNG Naranjito. *See* Appx. 7-8.

SNG Naranjito's assets were sold for $7 Million on December 31, 2016. The majority of the $7 Million is being held in an account owned by SNG Naranjito awaiting a declaration by the arbitration panel as to proper distribution after accounting for any outstanding operational costs, expenses, and debts of SNG Naranjito and any monies wrongfully retained by Plaintiff or its owner prior to the sale of Naranjito's assets. *Id.*

---

[1] Of note, the Parties are scheduled for mediation on April 18, 2017.

Plaintiff has filed this lawsuit and attempted to artfully plead around the Arbitration Provision in the Naranjito Operating Agreement. However, even the most cursory review of Plaintiff's Complaint demonstrates that all issues brought by Plaintiff are factually intertwined with the arbital issues presented to the arbitration panel by Defendant. In addition, the issues brought forth by Plaintiff's Complaint are encompassed in the Naranjito Arbitration because Plaintiff and Mr. Rivera should account for all funds wrongfully withheld and immediately return all of the amounts so retained or offset the amount wrongfully withheld from Plaintiff's portion of the funds from the sale of SNG Naranjito.

## II. Argument

### A. Arbitrability has been delegated to the arbitrator.

Generally, the court determines whether a party must be compelled to arbitrate a claim. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). In considering a motion to compel arbitration, courts typically engage in a two-step analysis: (1) whether the parties agreed to arbitrate the dispute and (2) whether any federal statute or policy renders the claims nonarbitrable. *Id.; Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008). With regard to the first step, courts divide it into two separate considerations: (a) whether a valid agreement to arbitrate *some* claims exists and (b) whether the dispute at hand falls within the terms of that valid agreement. *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Parties, however, "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether ... their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

Delegating the issue of arbitrability gives the arbitrator, rather than the court, the authority to decide if the parties must be compelled to arbitrate their claims. *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 407-08 (5th Cir. 2014); *Cubria*, A-16-CA-544-SS, 2017 WL

1034731, at *5–6. A delegation provision "need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 410 n.28 (5th Cir. 2014); *See, e.g., Petrofac, Inc. v. DynMcDermott Petroleum Operations*, 687 F.3d 671, 675 (5th Cir. 2012) (concluding that parties agreed to arbitrate arbitrability by incorporating into their arbitration agreement the rules of the American Arbitration Association, which state that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"). The Fifth Circuit has held "express incorporation of the [AAA Rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d. 249, 262-63 (5th Cir. 2014) (citing *Petrofac, Inc.*, 687 F.3d at 675); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Edwards v. Doordash, Inc.*, No. CV H-16-2255, 2016 WL 7852532, at *13 (S.D. Tex. Dec. 8, 2016).

Here, there is clear and unmistakable intent to delegate the question of arbitrability. The Arbitration Agreement expressly states that, after unsuccessful informal resolution, any dispute arising "between two or more Members under this Agreement" shall be submitted "to conclusive and binding arbitration in Fort Worth, Tarrant County, Texas, before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of The American Health Lawyers Association." Appx. 50. Section 5.2(a) of the Commercial Arbitration Rules of The American Health Lawyers Association states:

> ARBITRABILITY. Once appointed, the arbitrator may issue a preliminary award that addresses whether the arbitration clause is valid, and whether it applies to the claims or counterclaims raised by the parties.

Appx. 83. This language is clear and unmistakable evidence Plaintiff and Defendant intended to delegate the power to decide arbitrability to an arbitrator. *See Crawford*, 748 F.3d at 263; *Cubria*, 2017 WL 1034731, at *5–6.

A recent Western District of Texas case clearly demonstrates the Federal Court's position regarding the delegation of arbitrabilty. *Cubria*, A-16-CA-544-SS, 2017 WL 1034731, at *5–6. In *Cubria*, a customer sued Uber for violations of the Telephone Consumer Protection Act after she received robo-text messages as part of a political campaign by Uber to oppose a City of Austin ordinance requiring background checks for Uber drivers. *Id.* at *3. Uber filed a motion to compel arbitration. *Id.* at *1. The court found that Plaintiff accepted Uber's terms and conditions when she signed up for Uber on her phone. *Id.* Specifically, Uber's terms and conditions included an arbitration provision which stated in part, "[t]he arbitration will be administered by the [AAA] in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "*AAA Rules*") then in effect...." *Id.* at *2. The court granted Uber's motion to compel and held the language in the arbitration agreement to be "clear and unmistakable evidence Plaintiff and Uber intended to delegate the power to decide arbitrability to an arbitrator." *Id.* at *6. In the case at bar, like *Cubria*, the parties have a valid arbitration clause which delegates the authority to decide the scope of the arbitration agreement to an arbitrator.

Plaintiff relies on various cases to support its argument that whether an issue is arbitrable is a matter to be decided by the court. Plaintiff even cites *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) for the correct proposition that courts generally determine whether a party must be compelled to arbitrate a claim, *but* the parties can agree to have the issue decided by the arbitrator. Unlike the arbitration provision in the Naranjito Operating Agreement, none of the arbitration provisions at issue in the cases Plaintiff cites attempted to delegate the authority to decide the scope of the arbitration agreement to an arbitrator.

As such, the Parties, through the Naranjito Operating Agreement, have delegated the authority to determine arbitrability of all claims to the arbitration panel.

## B. All issues between the Parties are factually intertwined.

In determining whether or not parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). "Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter." *Shanks v. Swift Transp. Co. Inc.*, 2008 WL 2513056, at *10 (S.D. Tex. June 19, 2008) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). "Claims, even if otherwise not arbitral, can become arbitral when factually intertwined with arbitral claims." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 885 (Tex.App.—Beaumont 2009, no pet.) (citing *Jack B. Anglin Co., Inc.*, 842 S.W.2d at 271. "To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.) (quoting *In re Prudential Sec. Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

In this case, Plaintiff is attempting to artfully plead its Complaint to get out of the Arbitration Agreement in the Naranjito Operating Agreement. However, even the most perfunctory review of Plaintiff's Complaint demonstrates that all issues brought by Plaintiff are factually intertwined with the arbital issues presented to the arbitration panel by Defendant.

Plaintiff and Defendant are the sole members of SNG Naranjito and, through the Naranjito Operating Agreement, they agreed to arbitrate all disputes amongst members. Appx. 11 and 50. While SNG Naranjito was operating the Centro de Dialisis San Miguel Arcangel dialysis clinic (the "Clinic"), Defendant learned that Plaintiff was improperly retaining funds belonging to SNG Naranjito. Defendant

then learned that Plaintiff, as the administrator of the Clinic, had failed to ensure payment of a number of debts related to the everyday operations of SNG Naranjito, including employee payroll, rent, medical director services, utility bills, medical supplies, as well as, various vendor invoices. In order to avoid disruption in the operation of the Clinic, then owned by SNG Naranjito, Defendant paid the debts. After an unsuccessful attempt at informal resolution, Defendant filed for arbitration of this issue. *See* Appx. 5-9. Shortly thereafter, SNG Naranjito's assets were sold for $7 Million on December 31, 2016. The majority of the $7 Million is being held in an account owned by SNG Naranjito awaiting a declaration by the arbitration panel as to proper distribution after accounting for any outstanding operational costs, expenses, and debts of SNG Naranjito and any monies wrongfully retained by Plaintiff prior to the sale of Naranjito's assets. *Id.*

Plaintiff's Complaint focuses on two contracts, the Membership Contribution Agreement ("MCA") and the Agreement to Sell Assets of SNG Naranjito, LLC to Fresenius Medical Care ("Member Sale Agreement") and, in essence, asks for the Court to immediately award Plaintiff its 40% share of the sales proceeds. In August 2014, Plaintiff and Defendant entered into a number of agreements surrounding the formation and capitalization of SNG Naranjito, including the Membership Contribution Agreement ("MCA") and the Naranjito Operating Agreement. Appx. 130-134 and 11-59. Plaintiff claims that Defendant breached the MCA by encumbering SNG Naranjito's assets "with liability and obligations personal" to Defendant. However, Plaintiff's Count I-Breach of the MCA does not give any factual explanation as to how Plaintiff was harmed by Defendant's alleged conduct. Appx. 122. Instead, it is clear that Plaintiff is simply referencing an agreement the Parties entered into that does not contain an arbitration provision. Further, Section 3(b) of the MCA states that the Members "have been provided, have read and…agree to be bound" by the Naranjito Operating Agreement. Appx. 131. Finally, whether one member of SNG Naranjito breached a contract with another member would

clearly be a dispute between members that should be arbitrated pursuant to Arbitration Agreement in the Naranjito Operating Agreement. Appx. 50.

Plaintiff's <u>Count II-Breach of the Member Sale Agreement</u> claims that Defendant breached the Member Sale Agreement by "failing to pay to [Plaintiff] its 40% share of the $7 Million sale proceeds." Appx. 122-123. However, Plaintiff's "share of the $7 Million sale proceeds" has been placed in an account owned by SNG Naranjito and is awaiting a declaration by the arbitration panel as to proper distribution after accounting for any outstanding operational costs, expenses, and debts of SNG Naranjito and any monies wrongfully retained by Plaintiff or its owner prior to the sale of Naranjito's assets. *See* Appx. 7-8. A determination of the amount that is finally distributed is necessarily factually intertwined with the arbitration panel's investigation and final determination. The dispute between Plaintiff and Defendant about how much money Plaintiff improperly withheld from SNG Naranjito and failed to pay for the daily operations of the Clinic is a dispute between members that is subject to arbitration. *See* Appx. 50. In addition, the Member Sale Agreement specifically incorporates the Naranjito Operating Agreement, which includes the Arbitration Provision.[2]

Finally, from a practical and economic standpoint, the Parties' and the Court's resources would be better used by compelling all of Plaintiff's claims to arbitration. If the Court retains any of Plaintiff's claims, the Parties will be required to undergo a repetitive, resource-consuming discovery process in two venues. Likewise, if any of Plaintiff's claims are retained by the Court, there would be the possibility of inconsistent rulings on similar issues presented to the Court and the arbitrator. *See Shanks v. Swift Transp. Co. Inc.*, 2008 WL 2513056, at *10 (S.D. Tex. June 19, 2008) ("Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter.").

---

[2] The Member Sale Agreement states, "[t]he undersigned, being Members of SNG Naranjito, L.L.C. (the "Company"),…do hereby certify and warrant, individually and on behalf of the Company, that in accordance with the…*operating agreement*…the following resolutions, which have not been modified or rescinded, were approved." Appx. 136 (emphasis added).

Plaintiff cites to *Texaco, Inc. v. Am. Trading Transp. Co., Inc.*, 644 F.2d 1152 (5th Cir. 1981) as an example of a court staying an arbitration for litigation, but with a quick reading of this case it is easily distinguishable to the case at bar. In *Texaco,* Texaco asserted claims for damages to its dock following a collision between two vessels. *Id.* at 1153. One of the vessels was owned by American Trading Transportation Company, Inc. ("American") and was under a time charter to Texaco. *Id.* American sought to have Texaco's claims heard in arbitration and moved to stay the litigation pending arbitration. *Id.* The district judge entered an order staying the arbitration. American appealed. *Id.* On appeal, the Fifth Circuit upheld the stay of arbitration because the charter between American and Texaco provided for arbitration of "any and all differences and disputes … arising out of this charter". *Id.* The Fifth Circuit reasoned that the suit is not a result of a difference or dispute arising out of the charter, but a claim for damages to a dock, which neither arises out of nor depends upon the Charter." Simply, the claim did not fall within the arbitration provision. By contrast, the Naranjito Operating Agreement's arbitration provision clearly encompasses the disputes at issue and it would be an error to stay the arbitration.

Plaintiff also cites *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* for the proposition that the Operating Agreement's arbitration clause is narrow and applies to certain disputes that arise under that agreement only. However, in *Pennzoil,* the Fifth Circuit stated courts "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration….arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998). Furthermore, the Fifth Circuit in *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd* (another case cited by Plaintiff), stated that an arbitration agreement providing, "Any dispute or difference between the parties arising out of this Charter shall…be referred to three

arbitrators", was of the "broad type". 523 F.3d 528, 536 (5th Cir. 2008) *citing Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140 (5th Cir. 1985). The arbitration clause at issue here is also of the "broad" type because it mirrors the provision quoted in *Precious Flowers Ltd.*

Accordingly, if the Court finds that the Parties have not delegated arbitrability to the arbitrator, it is clear that all issues raised in Plaintiff's Complaint constitute either direct disputes between the members of SNG Naranjito or are factually intertwined with arbital disputes between members. Both of such claims are encompassed by the "broad type" of Arbitration Provision found in the Naranjito Operating Agreement and should be compelled to arbitration.

WHEREFORE, Defendant Sankar Nephrology Group, L.L.C. prays that the Court deny Plaintiff Ambulatory Services of Puerto Rico, L.L.C.'s motion to stay arbitration and grant Defendant's Motion to Compel Arbitration. If the Court decides to determine the issue of arbitrability, Defendant asks the Court to send all issues raised in Plaintiff's Complaint to the arbitration in progress and stay this proceeding until final award.

Respectfully submitted,

_____
Brian C. Newby
State Bar No. 14947320
bnewby@canteyhanger.com

David K. Speed
State Bar No. 24070657
dspeed@canteyhanger.com

CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
Phone: (817) 877-2800
Fax: (817) 877-2807

*Attorneys for Defendant*
*Sankar Nephrology Group, LLC*